UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Gerardo SUAREZ, | Civ. No. 2:13-2445 |
| Plaintiff, | (KM)(SCM) |
| v. | OPINION |
| PROVIDENT LIFE AND CASUALTY INSURANCE CO., | |
| Defendant. | |

<u>**KEVIN MCNULTY, U.S.D.J.**</u>:

This matter comes before the court on the motion (ECF No. 5) of Defendants to dismiss all claims against First Unum, Inc. and to dismiss Counts II and III of the amended complaint (ECF No. 4[1]). Plaintiff Gerardo Suarez brings this action against Defendants First Unum, Inc. ("First Unum") and Provident Life and Casualty Co. ("Provident"), pleading violations of ERISA, 29 U.S.C. §1132 (a)(1)(b) and RICO, 18 U.S.C. §1961, *et seq.*, as well as breach of contract and fraud. Suarez alleges that Provident, the carrier of his long-term disability insurance coverage, wrongfully discontinued his disability payments.

For the reasons set forth below, the motion to dismiss is GRANTED in part and DENIED part.

**I.   DISMISSAL OF FIRST UNUM, INC.**

Provident and Unum contend that Unum did not issue the

---

[1]   ECF Nos. 3 and 4 appear to be identical versions of the amended complaint, except for the spacing.

insurance policy under which Suarez sues herein. Therefore, they ask that all claims against Unum be dismissed. (Def. Mot. 1, ECF No. 5). The first complaint named only Unum as a defendant. (*Id.*). After the complaint was filed, Unum contacted Suarez to indicate that it was improperly named as a defendant because Suarez's policy was issued by Provident. (*Id.*). To avoid a motion to dismiss based on Unum being an improper defendant, Suarez's counsel agreed to file an amended complaint. (*Id.*; *see* ECF Nos. 3, 4). However, it appears that the amended complaint still lists First Unum in the caption, which reads "Provident Life and Casualty Insurance Co., s/h/a First Unum, Inc." (ECF No. 4).

The caption in the amended complaint appears to be in error. As Suarez acknowledges, "the entity he intended from the commencement of the suit to name was Provident Life and Casualty Insurance Co." (Pl. Opp. 1 n.1, ECF No. 7). Because Suarez does not object to the dismissal of Unum as a defendant (*id.*), all claims against Unum will be DISMISSED and the caption will be amended to delete any reference to Unum.[2]

## II. BACKGROUND[3]

Plaintiff Gerardo Suarez was an employee of Intesa San Paolo, S.P.A. ("Intesa") until he became disabled and stopped working. (Am. Compl. ¶3, ECF No. 4).

Defendant Provident is a long-term disability compensation carrier that was an insurer and plan administrator of a group plan for employees of Intesa. (*Id.* ¶4). Suarez alleges that Provident was a

---

[2] Because I dismiss all claims against First Unum, I will refer to Provident as the sole defendant for the remainder of this opinion. References in the amended complaint to Unum will be deemed to apply to its subsidiary, Provident, as the context requires.

[3] The facts that follow are taken from the amended complaint (ECF No. 4). They are assumed to be true solely for the purposes of the motion to dismiss.

subsidiary of Unum, a holding company, and one of the Unum "family of companies." (*Id.* ¶5).

Suarez was one of the employees insured by Provident. (*Id.* ¶4). At some point, Provident was terminated as a group carrier. At that time, Provident offered employees the opportunity to continue their coverage under individual plans by entering into agreements with Provident for comparable coverage. (*Id.* ¶24). Suarez accepted this offer. (*Id.* ¶24).

At some point, Suarez was injured in two accidents involving trauma to his head, causing him neurological damage. (*Id.* ¶8). Following the accidents, in February 2008, Suarez was awarded Social Security benefits. (*Id.*). The Social Security Administration determined that Suarez's disability began in December 2006. (*Id.*).

In January 2008, Suarez notified Provident that he had been unable to work since December 2006. (*Id.* ¶6). Provident found that Suarez was eligible for long-term disability payments in the amount of $2,700 per month, which Provident began paying. (*Id.* ¶9). Suarez alleges that Provident continued making the payments for several years and then sought evidence that "would allow it to cease paying" him. (*Id.* ¶10).

Specifically, Suarez alleges that Provident hired Dr. Alexander B. Chervinsky, a neuropsychologist, to "make every effort to render a report which would be unfavorable to Mr. Suarez's continued disability." (*Id.* ¶11). In September 2010, Dr. Chervinsky examined Suarez and wrote a report finding that he was not disabled. (*Id.* ¶12). Based on this report and "other consulting reviews it paid for," Provident discontinued its payments to Suarez. (*Id.* ¶13). Suarez alleges that this was contrary to the opinions of his treating and consulting physicians and neuropsychologists. (*Id.*). He also alleges that Dr. Chervinsky's finding of no disability was made "despite [his] sensory problems symptomatic of neurological impairment," including difficulties with concentration and

senses such as taste and smell. (*Id.* ¶14). Suarez alleges that Dr. Chervinsky ignored many of his other symptoms, including:

> bizarre behavior indicative of cognitive deficits, such as urinating in a waste paper basket, and taking a shower with his clothes on, and Mr. Suarez's inability to remember words, differences in his experiences of smells and tastes, and other behaviors and conditions symptomatic of disabling traumatic brain injury.

(*Id.*). Suarez asserts that Dr. Chervinsky wrongly attributed Suarez's poor performance on psychological tests to intentional under-achievement. (*Id.* ¶17). Suarez also accuses Dr. Chervinsky of wrongly rejecting the findings of Suarez's neuropsychologist, Dr. Rolland Parker. (*Id.* ¶¶18–19). Finally, Suarez alleges that Dr. Chervinsky "had a proven record at the time he was engaged by Provident . . . of finding a high proportion of claimants to be not disabled." (*Id.* ¶16).

Suarez accuses Provident of not reviewing his personnel file before terminating his disability payments. A review, he says, "would have supported [his] assertion of a gradual deterioration in his ability to perform his job satisfactorily." (*Id.* ¶15). He also alleges that Provident wrongly relied on Dr. Chervinsky's findings and rejected Dr. Parker's findings to avoid making disability payments. (*Id.* ¶19). Suarez contends that Provident acted arbitrarily and capriciously and wrongly deprived him of the benefits of his policy. (*Id.* ¶20). Suarez pleads that he has exhausted his administrative appeals under his insurance policy. (*Id.* ¶21).

Suarez alleges that Provident's denial of benefits is "part of its policy of intentionally and illegally denying legitimate claims in order to boost its profits, in violation of the Racketeer Influenced and Corrupt Organizations Act, ("RICO"), 18 U.S.C. §§1961–1968." (*Id.* ¶31). To

4

support this allegation, Suarez describes investigations of First Unum's[4] disability handling practices by the United States Department of Labor as well as regulators in forty-nine states and territories, including the California Insurance Commissioner. (*Id.* ¶¶33–37). He also describes individual lawsuits against Unum. (*Id.* ¶¶38–39, 41–43, 50, 56). Suarez provides examples of whistle blower employees at Unum who have revealed that Unum has "scrub months" before the end of each quarter during which managers look for claims to terminate. (*Id.* ¶44–45). Suarez alleges that it is Unum's practice to give bonuses to claim handlers for denying claims. (*Id.* ¶48).

Suarez also alleges that "UNUM has, in particular, taken advantage of the ability to make subjective findings negating disability in cases of cognitive defects caused by traumatic brain injury ("TBI") and other organic neurological conditions, especially where highly paid insureds are involved." (*Id.* ¶52). To support this allegation, Suarez points to other cases in which Unum denied disability payments to claimants despite the Social Security Administration's having approved benefits (*id.* ¶53) and despite the claimants' medical history of treatment for disabilities (*id.* ¶¶54–55).

Suarez pleads four causes of action: (1) violation of ERISA; (2) breach of contract and breach of implied covenant of good faith and fair dealing; (3) fraud; and (4) RICO conspiracy.

Provident now moves to dismiss the second and third causes of action under Federal Rule of Civil Procedure 12(b)(6).

---

[4] Suarez presumably describes cases involving Unum because Provident is a subsidiary of Unum. (Am. Compl. ¶5). Suarez alleges that both Unum and Provident engage in the types of practices he describes in the complaint. (*Id.*).

## III. DISCUSSION

### a. Standard

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trustees Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

### b. Analysis

Provident argues that Sanchez's insurance policy qualifies as an ERISA plan, and that ERISA preempts Suarez's state law claims for

6

breach of contract and fraud. Sanchez maintains that determining whether his plan is an ERISA plan poses intertwined factual and legal issues inappropriate for resolution on a motion to dismiss. (Pl. Opp. 3). Because Sanchez has pled sufficient facts to proceed on the alternative claims under ERISA and contract and fraud, the motion to dismiss Counts II and III will be denied.

"A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones." Fed. R. Civ. P. 8(d)(2). Suarez has done just that in his amended complaint. Suarez alleges a federal ERISA claim, and, in the alternative, state-law claims for breach of contract and fraud. Suarez acknowledges that he pleads in the alternative. (Pl. Opp. 3).

Suarez may not recover under both ERISA and his contract and fraud claims. ERISA preempts recovery under breach of contract and fraud theories when these claims "relate to" an ERISA plan, *Nat'l Sec. Sys., Inc. v. Iola*, 700 F.3d 65, 83 (3d Cir. 2012), and "do not attempt to remedy any violation of a legal duty independent of ERISA," *Aetna Health Inc. v. Davila*, 542 U.S. 200, 214 (2004). So, if Suarez's policy is an ERISA plan, the two state-law claims are preempted; if it is not an ERISA plan, the ERISA claim is invalid but the state law claims are not preempted. Suarez does not debate this point.

Provident argues that Suarez's insurance policy qualifies as an ERISA plan. That may be so. However, Suarez does not have the burden of proving this or the alternative at the motion to dismiss stage. Determining whether Sanchez's policy is an ERISA plan will likely involve a detailed factual inquiry that is more appropriately undertaken at the summary judgment stage. Provident's numerous citations to exhibits only illustrate this point. (*See e.g.*, Def. Reply 11, ECF No. 10).

An ERISA plan is (1) "any plan, fund, or program"; (2) "established

or maintained by an employer or by an employee organization"; (3) "for the purpose of providing" benefits; (4) "for its participants or their beneficiaries." 29 U.S.C.A. § 1002(1). The parties agree that Intessa's group policy was an ERISA plan. The question is whether Suarez's coverage under the group ERISA plan was "converted" or "continued" into his current policy. A converted policy is "arguably independent from [a previous] ERISA plan because it involves a new policy issued to an individual." *Horan v. Reliance Standard Life Ins. Co.*, No. CIV.A. 12-7802 JAP, 2014 WL 346615, at *6 (D.N.J. Jan. 30, 2014) (noting that the Third Circuit has not ruled on whether a converted policy is still subject to ERISA). Although the Third Circuit has not ruled on the issue, some courts have held that a group policy that is converted to an individual plan is no longer subject to ERISA. *See, e.g., Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 876 (9th Cir. 2001); *Demars v. CIGNA Corp.*, 173 F.3d 443, 446 (1st Cir. 1999). A continuation of coverage, as opposed to a conversion, would mean that Suarez's current policy is still subject to ERISA. *See id.*

Provident argues that Suarez's insurance coverage was continued, not converted. (Def. Reply 5–6). In support of this, they contend that Suarez "admits" as much: "Provident offered to individuals formerly covered under Intessa Sanpaolo's ERISA plan the opportunity to *continue* their coverage as individuals by entering into agreements with Provident to subscribe to comparable coverage." (Def. Reply 6 (citing Am. Compl. ¶24) (emphasis added)). However, it is not for Suarez to determine whether his plan was converted or continued; thus, his opinion on the issue, and his choice to use the word "continue" in his pleadings, are irrelevant. The words "continuation" and "conversion" are terms of art in the insurance world that may have legal significance. A plaintiff may not "admit" to them any more than a plaintiff may "admit" any other legal conclusion in his complaint. And, as pointed out above, Suarez, unsure

of his plan's legal status, pled in the alternative. Alternative pleading is permissible; each alternative is not deemed an "admission" as to the other.

Suarez and Provident also analyze whether the "safe harbor" exception to ERISA applies to Suarez's current policy. The safe harbor provision states that ERISA is not applicable to any policy for which:

> (1) No contributions are made by an employer or employee organization;
>
> (2) Participation the program is completely voluntary for employees or members;
>
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
>
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j). Suarez argues that his current individual policy falls under this safe harbor provision. (Pl. Opp. 8–9). Provident counters this with evidence that Intessa's group policy does not fall under this safe harbor exception. (Def. Reply 9–15). However, Provident's analysis focuses on the original group policy, which, as everyone admits, was an ERISA plan. What is absent from the record on this motion to dismiss is (1) enough information to determine whether Suarez's coverage was continued or converted; and (2) if the coverage was converted, information regarding Suarez's *individual* plan, including (a) what, if any, contributions Suarez's employer makes to the individual plan; (b) what, if any, functions Suarez's employer has with regard to the individual plan; and (c) what, if any, consideration Suarez's employer receives for

9

administrative services it may or may not render in connection with the plan.

Provident's bare assertion: "once ERISA, always ERISA" (Def. Reply 5) is unhelpful. In the cases cited by Provident, the courts were able to determine whether the coverage was converted or continued; such is not the case here. (*See* Def. Reply Br. 6–8 (citing *Mass. Cas. Ins. Co. v. Reynolds*, 113 F. 3d 1450 (6th Cir. 1997); Horan, 2014 WL 346615; *Tannenbaum v. Unum Life Ins. Co. of Am.*, No. CIV A 03-CV-1410, 2006 WL 2671405 (E.D. Pa. Sept. 15, 2006); *Brown v. Paul Revere Life Ins. Co.*, No. CIV.A. 01-1931, 2002 WL 1019021 (E.D. Pa. May 20, 2002); *Solis v. Koresko*, 884 F. Supp. 2d 261, 278 (E.D. Pa. 2012)).

Contrary to Provident's argument, it is not clear at this stage of litigation whether Suarez's coverage was converted or continued. Therefore, the fact-laden inquiry as to whether Suarez's coverage was converted or continued is best left to the summary judgment stage.[5]

**IV.   CONCLUSION**

For the foregoing reasons, the motion to dismiss is GRANTED in part and DENIED in part.

The motion to dismiss all claims against First Unum, Inc. will be granted, leaving its subsidiary, Provident, a sole defendant. The motion to dismiss Counts II and III of the Complaint is denied.

Dated: March 4, 2015

                                              **Kevin McNulty**
                                              **United States District Judge**

---

[5]   I also decline to determine at this juncture whether a group policy that is converted, rather than continued, into an individual policy without any employer involvement ceases to be subject to ERISA. That legal issue will be posed, or not, depending on the outcome of discovery.